## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RICHARD GARY MCGUIRE,       )
                           )
          Plaintiff,      )
                           )
v.                          )      Case No. 08-1072-JTM
                           )
AMERICAN FAMILY MUTUAL     )
INSURANCE COMPANY, et al.,     )
                           )
         Defendants.     )
                           )
                           )

## MEMORANDUM AND ORDER

This matter is before the court on defendants' motion for a protective order. (Doc. 20). Specifically, defendants object to paragraphs 10 through 16 of plaintiff's Rule 30(b)(6) deposition notice. As explained in greater detail below, the motion shall be **GRANTED IN PART** and **DENIED IN PART.**

### Background

This is a breach of contract case. Highly summarized, plaintiff alleges that he became a licensed Kansas insurance agent for defendants in 1989 and established an office in Mulvane, Kansas. In January 1993 plaintiff executed an American Family Agent Agreement (the "Agreement") which defined his relationship with defendants. Plaintiff contends that

defendants breached the Agreement when they terminated him in January 2006 without prior written notice for allegedly engaging in "rebating," a practice prohibited by K.S.A. §§ 4-2403 and 40-2404(8). Plaintiff also alleges that defendants breached an implied covenant of good faith and fair dealing.

Defendants concede that plaintiff's agency relationship was terminated without prior written notice but argue that the Agreement specifically allows for termination without written notice for "dishonest, disloyal or unlawful conduct." Because rebating is unlawful under Kansas law, defendants argue that they terminated plaintiff pursuant to terms of the Agreement and the contract was not breached.

## Motion for Protective Order

Plaintiff served defendants with a Rule 30(b)(6) deposition notice with a list of 19 "matters for examination." As noted above, defendants seek a protective order concerning paragraphs 10 through 16 which seek information from 1989 through 2006 concerning agent compensation.[1] The parties' arguments are described in greater detail below.

---

[1] For example, paragraph 13 asks defendants to

Identify all studies, reports, memoranda, papers, and/or presentations regarding the economic impact to American Family of the different American Family Agent Agreements beginning in 1989, including any comparison between different versions of the Agreements, and advantage to American Family of agents being under one Agreement versus another Agreement.

**Relevance**

Defendants argue that the information requested in paragraphs 10 through 16 is not reasonably calculated to lead to the discovery of admissible evidence; therefore, a protective order should be entered excusing defendants from compliance with the deposition notice. Defendants offer the following explanation in support of their argument.

First, defendants assert that plaintiff engaged in illegal rebating by paying a portion of a premium for a life insurance policy sold by plaintiff to a customer. Because the Agreement allows defendants to terminate an agent for such a practice, defendants contend no breach of contract occurred.

Second, paragraphs 10 through 16 of the deposition notice seek information concerning defendants' motive for terminating the agency relationship, an issue related to plaintiff's claim that defendant breached an implied covenant of good faith and fair dealing. Defendants contend that "an action for a breach of the implied covenant of good faith and fair dealing will not lie when its alleged basis is an action the defendant was specifically authorized to take pursuant to the contract in issue." Doc. 20, p. 5 (citing, e.g., M&I Marshall & Ilsley Bank v. Schlueter, 655 N.W. 2d 521, 525 (2002).[2] Because plaintiff has no viable breach of implied covenant claim, defendants argue that discovery of their motive is irrelevant.

_____

[2]

The Agreement apparently contains a choice of law provision which suggests that Wisconsin law governs the contract. Both parties rely on Wisconsin law to support their respective arguments concerning the claimed breach of an implied covenant of good faith and fair dealing.

Plaintiff counters that under the Agreement his compensation level increased with his length of service with defendants.  He contends that defendants terminated the relationship three months short of an anniversary, at which time his compensation level would have increased significantly.  The agency and accounts were then transferred to a "rookie" agent earning compensation at a substantially lower rate, thereby increasing defendants' earnings.

Plaintiff concedes that he sold a life insurance policy to an American Family employee in 2000 and directly paid a portion of the premium for the next four years; however, plaintiff denies that he engaged in the illegal practice of rebating premiums. Plaintiff contends that defendants initially charged an incorrect premium based on blood tests showing an elevated cholesterol level.  However, plaintiff had the customer provide blood samples after fasting which resulted in a lower cholesterol level.  Over the next four years plaintiff submitted his own check for the difference in premium to defendants and annually requested that defendants correct the premium charge.[3]  Plaintiff asserts that defendants finally "re-priced" the premium rate after terminating his agency Agreement and returned all of the overpayments on the policy to plaintiff.

With respect to defendants' argument concerning plaintiff's claim for a breach of the implied covenant of good faith and fair dealing, plaintiff cites a line of Wisconsin cases for the proposition that "a party may be liable for breach of the implied contractual covenant of

---

[3]

During the first four years plaintiff sent defendants (1) a check from the customer for the amount that should have been charged and (2) a check from plaintiff for the difference.  Defendants accepted both checks without taking any action.  In 2005 plaintiff failed to send a check for the difference and defendants commenced an investigation.

good faith even though all the terms of the written agreement may have been fulfilled." <u>See</u>,

<u>e.g.</u>, <u>Wisconsin Natural Gas Company v. Gabe's Construction Co., Inc.</u>, 582 N.W. 2d 118

(1998). Plaintiff contends that the disputed discovery requests seek information relevant to

defendants' performance under the contract. (e.g., that it was not in good faith.) Defendants

dispute plaintiff's factual recitations as well as his analysis of Wisconsin case law.[4]

The problem with defendants' argument concerning relevance is that it is based on

disputed factual and legal arguments which normally are the subject of a dispositive motion.[5]

The court declines defendants' request for a protective order based on arguments concerning

the merits of plaintiff's claims which have not been presented to and/or resolved by the

district judge. Accordingly, defendants' request for a protective order based on a lack of

relevance shall be DENIED.

**Undue Burden**

Paragraph 10 of the deposition notice asks that defendants designate a witness or

witnesses to testify regarding the following:

---

[4]

For example, defendants dispute plaintiff's assertion that he annually requested that the premium be corrected. Defendants assert that plaintiff only requested a rate correction *after* they commenced their investigation in December 2005 for illegal rebating. Defendants also argue that it is common for agents to accept checks from customers and to forward payment from the agent's trust account. Because of this practice, a check from plaintiff for the unpaid premium would not raise a red flag that plaintiff was rebating premiums.

[5]

Defendants concede "that this isn't a full-blown motion for summary judgment, and do not seek a final adjudication of disputed facts." Doc. 26, p. 1.

10.   Identifying those individuals involved in servicing or administration of agents, whether identified as Agency Services or otherwise, from 1989 through the present.  For each person, the witness should identify the following:

    a.  Name.

    b.  Position held and area of responsibility.

    c.  Date of employment.

    d.  Last known contact information, including address, e-mail address, and telephone numbers.

Defendants argue that gathering such information is unduly burdensome.  The court agrees.  Defendants have agreements with approximately 4,000 independent agents who are serviced by hundreds of employees currently working within three regions.[6]  In addition, the request covers a 20-year period and defendants have closed offices and transferred functions to different departments over that period of time.  Under the circumstances, determining the identity of hundreds, if not thousands of employees over a 20-period is unduly burdensome.  Accordingly, defendants' request for a protective order concerning paragraph 10 shall be GRANTED.

---

[6]

    The regional offices are currently located in St. Joseph, Missouri; Madison, Wisconsin; and Denver, Colorado.  Defendants closed their regional offices in Minneapolis, Minnesota and Columbus, Ohio in 2004.  In addition to employees in the regional offices, the broadly worded request could include the Human Resources Department, Information Services Department and the entire management hierarchy.  The management category includes at least 5 regional managers, 23 state sales directors and 160 district managers.

**IT IS THEREFORE ORDERED** that defendants' motion for a protective order (**Doc. 20**) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 15th day of October 2008.


S/Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge