**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **RICHARD GARY MCGUIRE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 08-1072-JTM |
| ) | |
| **AMERICAN FAMILY MUTUAL** ) | |
| **INSURANCE COMPANY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiff's motion to strike defendants' Rule 26(e) supplemental disclosures. (Doc. 49). Specifically, plaintiff contends the supplemental disclosures are untimely and requests an order striking (1) Leroy Brungardt as a witness and (2) three documents. For the reasons set forth below, the motion shall be DENIED.

## Background[1]

This is a breach of contract case. Highly summarized, plaintiff alleges that he became a licensed Kansas insurance agent for defendants in 1989 and established an office in Mulvane, Kansas. In January 1993 plaintiff executed an American Family Agent Agreement (the "Agreement") which defined his relationship with defendants. Plaintiff contends that defendants breached the Agreement when they terminated him in January 2006 without prior written notice for allegedly engaging in "rebating," a practice prohibited by K.S.A. §§ 40-2403 and 40-2404(8). Plaintiff also alleges that defendants breached an implied covenant of good faith and fair dealing.[2]

Defendants concede that plaintiff's agency relationship was terminated without prior written notice but argue that the Agreement specifically allows for termination without written notice for "dishonest, disloyal or unlawful conduct." Because rebating is unlawful under Kansas law, defendants argue that the termination was pursuant to the terms of the Agreement and the contract was not breached. Plaintiff denies that he engaged in "rebating."

The rebating dispute relates to a specific life insurance policy. Plaintiff concedes that

---

[1] The "Background" section is merely a general summary of the parties' allegations and contentions and provides context for the motions. The section should not be construed as factual findings or any ruling concerning the merits of the case.

[2] Under the Agreement, plaintiff's compensation level increased with his length of service with defendants. He contends that defendants terminated the relationship three months short of an anniversary, at which time his compensation level would have increased significantly. The agency and his accounts were then transferred to a "rookie" agent earning compensation at a substantially lower rate, thereby increasing defendants' earnings.

-2-

he sold a life insurance policy to an American Family employee in 2000 and directly paid a portion of the premium for the next four years; however, plaintiff denies that he engaged in the illegal practice of rebating premiums. Plaintiff contends that defendants initially charged an incorrect premium based on blood tests showing an elevated cholesterol level. Plaintiff had the customer provide blood samples after "fasting" which resulted in a lower cholesterol level and arguably qualified the customer for a lower premium. Over the next four years plaintiff submitted his own check for the difference in premiums to defendants and annually requested that defendants correct the premium charge.[3] Plaintiff asserts that defendants finally "re-priced" the premium rate *after* terminating his agency Agreement.

## Motion to Strike

Plaintiff moves to strike, arguing that the second revised scheduling Order (Doc. 33) directs the parties to supplement their initial disclosures at least 40 days prior to the April 3, 2009 close of Phase I discovery.[4] Plaintiff contends that defendants did not comply with the

---

[3] During the first four years plaintiff sent defendants (1) a check from the customer for the amount that "should have been charged" and (2) a check from plaintiff for the difference. Defendants accepted both checks without taking any action. Plaintiff apparently failed to send a check for the difference in 2005 and defendants commenced an investigation.

[4] The parties proposed, and the court agreed, that discovery would be conducted in phases. Phase I discovery addresses liability issues and Phase II discovery addresses damages. Summary judgment motions are to be filed following the completion of Phase I discovery. Unfortunately, the phased discovery approach has taken considerably longer than the parties originally anticipated due to (1) unforeseen personal matters for defense counsel and (2) motions related to disputed discovery issues.

40 day notice deadline (February 22, 2009) but instead mailed their Rule 26(e) supplemental disclosure of Leroy Brungardt and three additional documents on April 3, the deadline for Phase I discovery.[5] Plaintiff argues that the untimely disclosures prevented his counsel from deposing Mr. Brungardt or pursuing follow-up written discovery before the close of discovery; therefore, the belated disclosures should be struck.[6] Plaintiff also complains that the belated disclosure is one more example of defendants' discovery delays in this case.

Defendants oppose the motion to strike, arguing that Mr. Brungardt was disclosed in (1) a letter produced in defendants' initial Rule 26(a) disclosures, (2) discussions during plaintiff's January 12, 2009 deposition, and (3) a February 6, 2009 email message from defense counsel. Defendants also argue that Mr. Brungardt and the three additional documents did not become significant until plaintiff's January deposition and February 9, 2009 expert witness disclosures; therefore, defense counsel was not in a position to judge whether Mr. Brungardt might be used "to support its ... defenses" when the initial disclosures were provided. Finally, defendants argue that Mr. Brungardt and the documents are for

---

[5] Mr. Brungardt is the Director of the Kansas Insurance Department's Producers' Division which is responsible for investigating rebating allegations. The three "documents" are: (1) pages from defendants' instruction manuals to agents from 1997 through the present concerning rebating, (2) a June 2004 email message to agents reminding agents to not engage in rebating and other inappropriate practices, and (3) a March 18, 2009 affidavit by Leroy Brungardt. Apparently, the affidavit contains the same information Mr. Brungardt would provide as a witness.

[6] "The rationale for the mandatory supplemental disclosures 40 days before the discovery cutoff is to put opposing counsel in a realistic position to make strategic, tactical, and economic judgments about whether to take a particular deposition or pursue follow-up 'written' discovery concerning a witness or exhibit disclosed by another party before the time allowed for discovery expires." Doc. 33 at pages 4-5.

impeachment; therefore, defendants were not obligated to disclose the witness and documents under Rules 26(a)(1)(A)(i) and (ii). The defendants' arguments are addressed in reverse order in greater detail below.

With respect to defendants' "impeachment-evidence" argument, Rule 26(a)(1)(A)(i) requires a party to disclose to other parties the name, address, and phone number "of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, ***unless the use would be solely for impeachment.***" (Emphasis added). Similarly, Rule 26(a)(1)(A)(ii) requires the disclosure of "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, ***unless the use would be solely for impeachment.***" (Emphasis added).

Plaintiff testified at his January 2009 deposition that he never received any documents from defendants containing guidelines for marketing insurance and possessed no documents regarding rebating. However, defendants contend that instructional manuals were provided to plaintiff and the manuals contain discussions concerning rebating; therefore, the pages of the manual disclosed on April 3 are for impeachment. Although not discussed in detail by either party, defendants also assert that a June 2004 email message to agents warning about rebating practices is also for impeachment.

Similarly, defendants argue that Leroy Brungardt will provide testimony that impeaches plaintiff's deposition testimony that he was told by the Kansas Insurance Department that

-5-

> "they had followed up on an investigation matter from American Family about me violating the rebating laws in the state of Kansas. They found no cause to that action and so they deemed the investigation over."

However, Mr. Brungardt explains that he was responsible for determining whether defendants' February 2006 letter to the Kansas Insurance Department concerning plaintiff's conduct warranted further investigation and/or disciplinary action and makes two points in his affidavit.

First, no "investigation" was conduced by the Kansas Insurance Department and the agency did not pursue the matter because (1) the Insurance Department has limited resources, (2) the conduct did not involve forgery, theft or other dishonest conduct leading to financial loss, and (3) defendant had already addressed the situation with the insured person and terminated plaintiff's agency agreement. Mr. Brungardt expressed no opinion as to whether plaintiff had engaged in rebating when he made the decision that the insurance department would not pursue the matter.

Second, Mr. Brungardt recently learned that an issue has been raised in this case as to whether an agent's payment of a portion of the premium "can constitute rebating under the statute if the insured is unaware that the payment has been made." Mr. Brungardt states that the Kansas Insurance Department's position is that an agent's payment of a portion of the premium for insurance is rebating under the statute, regardless of whether the insured is aware of the payment. This second point is in response to plaintiff's expert who expressed the opinion that payment of a portion of the premium is not "rebating" under the Kansas

statute if the insured person is not aware of the partial payment.[7]

Plaintiff counters that the supplemental disclosures do not impeach plaintiff's or his expert's testimony. Moreover, plaintiff argues that Rules 26(a)(1)(A)(i) and (ii) only excuse the initial disclosure of witnesses and materials used *solely* for impeachment. Plaintiff contends that the supplemental disclosures *also* aid defendants in their general defense; therefore, defendants' late disclosures are not protected by the "impeachment-evidence" exception.

The difficulty with the parties' "impeachment-evidence" debate is that the court is unable to determine definitively at this stage of the case whether or not the evidence in dispute will be used "solely" for impeachment.[8] Additionally, it is not clear whether defendants will even have a need to impeach plaintiff's testimony at trial. For example, it is not clear that plaintiff's deposition testimony that he was told by some unnamed individual from the Kansas Insurance Department that "they had followed up on an investigation .... about me violating the rebating laws ... [and] found no cause to that action" is even

---

[7] Plaintiff's expert expressed his opinion based on his insurance industry experience and his employment by the Kansas Insurance Department in 2001-2003. Although the precise contours of plaintiff's expert testimony are spelled out, Mr. Brungardt's testimony would certainly contradict and impeach any suggestion by plaintiff's expert that the Kansas Insurance Department takes the position that plaintiff's conduct is not rebating in violation of the Kansas statute.

[8] In practice, disputes concerning impeachment evidence that has not previously been disclosed typically arise during the course of trial when the disputed evidence can be evaluated in the context of admitted evidence.

admissible.[9] However, if such testimony is admitted, Mr. Brungardt's anticipated testimony would certainly contradict and call into question plaintiff's testimony on this point. Based on the limited record, this court is unable to conclude that the supplemental disclosures ***do not*** qualify as impeachment-evidence under Rules 26(a)(1)(A)(i) and (ii). Because the supplemental disclosures may ultimately qualify as impeachment-evidence, the court denies plaintiff's motion to strike.

The court also agrees that Mr. Brungardt's testimony and the three additional documents did not become significant to the defense until plaintiff testified that (1) the Kansas Insurance Department had somehow exonerated him and (2) that he had never received instructional materials from defendants warning about the practice of rebating. Moreover, plaintiff's disclosure in February 2009 of an expert opinion on an issue that appears to be a question of law is unusual.[10] Under the circumstances defendants should not be penalized for failing to formally designate Brungardt as a witness and the three documents in their initial disclosures.

---

[9] Plaintiff learned about defendant's letter to the Kansas Insurance Department from defendant's initial disclosures and personally called the agency to inquire about the letter and possible administrative proceedings. Testimony that some unnamed person made a comment to plaintiff about the agency's investigation and conclusions would appear to be hearsay. However, the court declines to speculate further on how or why plaintiff's testimony on this point is relevant and admissible. The bottom line is that the trial judge is in the best position to determine admissibility and whether defendants' evidence qualifies as appropriate "impeachment-evidence."

[10] Plaintiff's expert report appears to offer a legal interpretation of the Kansas statute on rebating. However, as previously noted, this court does not have the expert's precise testimony and the determination of whether the expert opinion is admissible and proper is, of course, reserved for the trial judge.

The more troubling issue is defendants' delay until April 3, 2009 before formally supplementing their disclosures. Defendants argue that plaintiff learned about Mr. Brungardt through defendants' initial disclosure of their February 9, 2006 letter to the Kansas Insurance Department. However, this letter does not satisfy Rule 26(a)(1)(A)(i)'s requirement of the production of "the name and, if known, the address and telephone number of each individual likely to have discoverable information ... that the disclosing party may use to support its claims or defenses." Merely producing a letter does not indicate whether the defendants "may use" the individual mentioned in the letter as a witness in the case.

Defendants' technical violation of the initial disclosure requirement is mitigated by the fact that plaintiff actually reviewed the letter and called the Kansas Insurance Department to ask whether any investigation had been conducted. Additionally, defense counsel sent a February 6, 2009 email to opposing counsel expressing an interest in scheduling the deposition of Mr. Brungardt. For reasons that are unclear, a deposition was never scheduled.[11] However, counsel for both parties were aware by February 6 that Mr. Brungardt was a potential witness in the case. Under the circumstance, striking Mr. Brungardt and his affidavit is too severe a sanction. However, the court will allow Phase I discovery to be reopened for plaintiff to take Mr. Brungardt's deposition. The court will also allow plaintiff

---

[11] Defendants assert that plaintiff did not respond to the February 6, 2009 email message and a decision was later made to secure Mr. Brungardt's affidavit. Plaintiff contends that the email request was discussed with defense counsel by telephone shortly after receipt and that defense counsel agreed to contact the Kansas Insurance Department and secure dates for Mr. Brungardt's deposition. Plaintiff heard nothing further from defendants concerning Mr. Brungardt's deposition and assumed that defendants had decided not to use Mr. Brungardt as a witness. The court is unable to resolve this factual dispute as to "who-said-what" after the February 6 email was sent.

to conduct additional discovery concerning the pages of the insurance manual and the email message disclosed on April 3, 2009 to avoid any prejudice to plaintiff.

**IT IS THEREFORE ORDERED** that plaintiff's motion to strike **(Doc. 49)** is **DENIED.** Phase I discovery is reopened for the limited purpose of (1) plaintiff's deposition of Mr. Brungardt and (2) plaintiff's additional discovery concerning the documents defendants disclosed to plaintiff on April 3, 2009. The additional discovery shall be completed by **July 22, 2009.**[12]

**IT IS FURTHER ORDERED** that the parties' joint motion for continuing the deadline for the filing of dispositive motions **(Doc. 51)** is **GRANTED.** The parties shall confer and submit their recommendations for amendments to the schedule by **July 11, 2009.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion

---

[12] Mr. Brungardt is not a party and his availability for a deposition is unknown; thus, the court will entertain an extension of this deadline. The parties may also amend this deadline by mutual agreement without further involvement of the court.

was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 19th day of June 2009.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge